## SAM GORUM v. STATE.

No. A-9487. July 28, 1939.
(92 P. 2d 1086.)

76

78

82

86

88

Mack M. Braly, of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. This appeal is from a judgment of conviction rendered in the district court of Pontotoc county, wherein appellant, Sam Gorum, was found guilty of the crime of robbery with fire-arms, and was sentenced to serve a term of 15 years in the state penitentiary.

The errors assigned will be noticed in the order presented.

The first contention in this case is that the trial court abused its discretion in denying the application for a

continuance for the purpose of taking the deposition of an out of state witness, and because of the absence of witnesses who had been subpoenaed.

The record shows that on April 16, 1937, defendant Sam Gorum, present and by his attorney, Homer Bishop, waived formal arraignment and requested time and was given ten days in which to plead.

On April 24th defendant filed a demurrer to the information on the ground that the same did not state facts sufficient to constitute a charge of robbery with fire-arms, which was overruled.

On September 13th, the case was assigned for trial on September 27th, and on that day passed to October 5, 1937.

That on October 1st there was filed officer's return on the notice, showing that defendant had been furnished with a list of the witnesses to be called in chief, and their post-office addresses, together with a true copy of the information.

On October 2d permission to file a motion to quash was granted, which motion alleged that the information was duplicitous, in that it attempted to charge three distinct offenses in one count. On the same day this motion was overruled.

On October 5th defendant filed motion to strike and set aside the order setting this case this day for trial, for the reason that a plea of not guilty had not yet been entered by this defendant, which was overruled. Thereupon in open court the defendant Sam Gorum pleaded not guilty.

On the same day and thereafter the affidavit and application for continuance, together with proof of service of notice to county attorney of intention to make application to said district court for commission to take depo-

sition of an out of state witness was filed, with copy of application attached.

The rule is well settled that it is the duty of the defendant to use all reasonable diligence in order to secure the attendance of witnesses in his behalf, and it must be made to appear from the application for a continuance that he has used due diligence to procure the attendance of his witnesses, and the application must set out facts fully which constitute such diligence. The mere statement of a defendant that he has used due diligence to secure the attendance of an absent witness is not sufficient to show diligence. Davis v. State, 10 Okla. Cr. 169, 135 P. 438.

The record in this case shows that this application for a continuance was presented to the court after the case was called for trial.

In his affidavit applicant states that on September 27, 1937, he caused a subpoena to issue for Paul Ingraham, Herman Johnson, Albert Wayman and Gene Horgan, all residents of Seminole, and that the subpoena for said witnesses has been returned "not found." That he is unable to proceed to trial and adequately present his defense by reason of the absence of said witnesses, whose testimony he, with the exercise of due diligence, has been unable to secure. That witness Herman Johnson, if present, would testify that he has been acquainted with Bob Myers for several years, that on February 21st and a few hours before the arrest of Sam Gorum and others, he met Bob Myers in Seminole; Myers stated that he was looking for Craig Gyles, alias "Lettuce," that he had been double crossed, but knew that Sam Gorum was not guilty of any unlawful act towards him, but he could not stand to lose $800 worth of whisky and was going to have the heat poured on Sam so that he would make up for this loss.

That the other witnesses for whom the subpoenaes issued, but not served, if present, each would testify of having known Craig Gyles, alias "Lettuce," a long time prior to the robbery complained of; "that on the night of the 20th of February, 1937, in a conversation with these witnesses and each of them Craig Gyles told these witnesses that he had pulled a fast one on Sam Gorum. That he had hi-jacked Bob Myers and his wife. That he had taken $125 of money given to him by Sam Gorum to buy whisky from Bob Myers. That he had actually stolen Sam's money, and that he had taken a large quantity of whisky from Mr. and Mrs. Bob Myers without paying for the same, and that he had made a clean get-away with the job; that Craig Gyles was intoxicated at the time of this conversation."

That witness Albert Wayman would testify, if present, that he talked with Mr. and Mrs. Bob Myers, and they each said they knew Sam Gorum was not present at the robbery, and that they did not believe Sam Gorum to be guilty.

That none of these witnesses were absent by the procurement and consent of affiant. That there is no witness or witnesses by whom he can prove the facts stated herein.

Affiant further states that he has this day served notice on the county attorney of his intention to apply for a commission to take the deposition of Dale Robinson, who resides in Martinez, Cal., a copy of said notice and application being attached thereto.

Therefore defendant prays that a reasonable continuance may be granted in order to procure the same, and also procure the attendance of said absent witnesses.

It was stipulated and agreed that the subpoena as issued and directed to the sheriff for the witnesses named in the motion for continuance may be considered as attached to the affidavit and made a part of the same.

In his application for commission to take the deposition, the defendant states that Dale Robinson, in said deposition to be taken, will testify that he was personally acquainted with Craig Gyles, alias "Lettuce," Clifford Harris, Floyd Harris and T. C. Barnwell; that in the city of Seminole, on the 18th day of February, 1937, the above-named persons proposed to witness that they hi-jack and rob Bob Myers and Mrs. Myers of a large quantity of tax-paid liquor; that said Craig Gyles stated that he would furnish cars to transport the party to the Myers place, and would furnish any firearms necessary for perpetrating said robbery. That witness Dale Robinson will further testify that he declined to take any part in said robbery; "that on February 20, 1937, the said 'Lettuce' told him that he together with T. C. Barnwell, Floyd Harris and Clifford Harris had accomplished the robbery and had divided the money of Sam Gorum between them, something over $125, and that the whisky had been divided, and that Sam Gorum knew nothing of said robbery."

An application by a defendant in a criminal case to take the deposition of an absent witness as provided for in the Code of Criminal Procedure (secs. 3039, 3040 and 3041, 22 Okla. Sts. Ann. §§ 781, 782 and 783) should state facts from which the court or judge may satisfy himself that the deposition of the witness is necessary to the attainment of justice. Owen v. State, 13 Okla. Cr. 195, 163 P. 548; Ennis v. State, 13 Okla. Cr. 675, 167 P. 229, L.R.A. 1918A, p. 312; Russell v. State, 41 Okla. Cr. 71, 270 P. 339.

In Hopkins v. State, 9 Okla. Cr. 104, 130 P. 1101, this court held:

"It is no abuse of discretion to overrule an application for continuance, where no diligence is shown to procure the attendance or to take the deposition of a nonresident witness."

Evidently, the trial court was satisfied that due diligence was not shown. This court has repeatedly held that

applications for a continuance on account of absent witnesses are addressed to the discretion of the trial court, and that the ruling of the trial court on such a matter will not be disturbed on appeal, unless there appears to have been a manifest abuse of such discretion.

If the defendant had exercised due diligence, he could have procured the deposition of the nonresident witness. The delay of the defendant as shown by the record in procuring process for his witnesses amounts almost to indifference. We think the application for a continuance lacks the evidence of good faith, as well as that of due diligence.

It is our opinion, considering the entire record in the case, that the trial court did not abuse its discretion in overruling the application for continuance.

The next contention is that the court erred in overruling the defendant's motion to declare a mistrial, because of the prejudicial conduct of the county attorney in the course of the trial.

The record shows that on the cross-examination of the witness McCollough he was asked if he had talked to some bell hops, who were witnesses, out in the hall of the courthouse yesterday. Answered, "Yes, sir, but I didn't say anything about the case." Asked if he saw a lady standing out in the hall, answered, "Yes, sir."

Thereupon counsel for the defendant asked the court to declare a mistrial, based on the alleged misconduct of the county attorney. Motion overruled.

It is the practice of the courts, whenever requested, as in this case, to have all the witnesses, both for the state and the defendant, called and sworn, and then instructed to retire beyond the limits of the court room, and there remain, without communication with any one as to what may have been testified to in the trial, until they are called to testify. And where the order of the

court is willfully violated, it is a matter within the discretion of the court to allow or exclude the testimony of such witnesses. Kilgore v. State, 10 Okla. Cr. 446, 137 P. 364; Womble v. State, 50 Okla. Cr. 108, 296 P. 515.

As we view the record, we are satisfied that the error, if any, was not prejudicial to the defendant.

Another contention is that the county attorney was guilty of misconduct "in making a highly prejudicial closing argument to the jury, in referring to the fact that the defendant failed to call his codefendant, John Eggleston, to the stand to corroborate the defendant's evidence, and in making other statements outside of the record, that were improper and prejudicial."

In the case cited, Hopkins v. State, 11 Okla. Cr. 385, 146 P. 917, 919, it is said:

"The court, by refusing to sustain the objections to the improper remarks, and in refusing to instruct the jury that, under the law, the defendant had no more right than the state had to call his codefendants as witnesses, and that his failure to call certain codefendants as witnesses should create no presumption against him, and the court's failure to direct the jury to disregard such improper remarks as not within the limits of legitimate argument, gave the jury to understand that they might properly and lawfully consider the same, all of which was manifestly prejudicial to the substantial rights of the defendant.

"Considering the doubtful character of the testimony introduced against the defendant, we think the improper remarks of the prosecuting attorneys in their arguments to the jury and the erroneous rulings of the court thereon probably determined the verdict."

In the instant case, however, it appears from the record that no objections were made at the time, nor was the attention of the trial court in any manner called to the alleged improper remarks.

It also appears that the arguments of counsel for the defendant are not incorporated in the record.

As a general rule, in order to make improper remarks available as a ground for a new trial, objections should be interposed at the time the prejudicial statements are made. To entitle a defendant to have reviewed by this court alleged improper remarks made by a county attorney to the jury, such remarks must not only be objected to, but defendant must go further and also move the court to exclude such remarks from the jury, and to instruct the jury not to consider such remarks.

In Cummings v. State, 57 Okla. Cr. 428, 48 P. 2d 879, this court held:

"To preserve the question of alleged misconduct of the county attorney in his argument to the jury, the attention of the court should be called to the argument at the time by proper objection and a ruling had thereon and an exception to the adverse ruling reserved and the same assigned as error in the motion for new trial and the petition in error. When this is not done, the question is not presented to this court for review."

In Simpson v. State, 40 Okla. Cr. 58, 266 P. 783, this court held:

"Where two or more defendants are charged in the same information, and are tried separately, a codefendant is a competent witness only with his own consent. He cannot be compelled to testify so long as the action is pending against him, and any comment by counsel for the state on the failure of defendant to call his codefendant not on trial to testify is not legitimate argument. Unless the case is close on the facts, and this misconduct may have influenced the verdict, it is not necessarily reversible error."

In Kennamer v. State, 59 Okla. Cr. 146, 57 P. 2d 646, 665, it is said:

"The sole object of all argument is the elucidation of the truth, greatly aided in matters of fact as well as in matters of law by full and fair forensic discussion. Argument may violate ethics and not violate law. It may be improper, but not illegal. Improper remarks by the pros-

ecuting attorney in the argument do not require a reversal, where they appear to be strictly in reply to allusions of counsel for the defendant."

It follows from the foregoing that this contention is not tenable.

The remaining errors question the sufficiency of the evidence to support the verdict and judgment of conviction.

It is urged that defendant's demurrer to the evidence should have been sustained, because there was no evidence other than that given by accomplices that connected defendant with the crime charged.

The statement of the case is a sufficient answer to this contention. Obviously, it is destitute of merit. In our opinion the guilt of the appellant is clearly and conclusively established by the evidence in the case.

This court has ever been zealous to protect the constitutional and statutory rights of a person convicted of crime, and to give to his appeal the fullest consideration permitted by law. We have done that in this case.

Upon a careful review of the entire record, it is the opinion of this court that the appellant is guilty of the crime charged, that he received a fair and impartial trial, and that the punishment assessed is merited by the evidence. It follows that the judgment of the district court of Pontotoc county herein must be affirmed. It is so ordered.

BAREFOOT and DAVENPORT, JJ., concur.