**James COMMANDER, Appellant,**

**v.**

**STATE of Oklahoma, Appellee.**

**No. F–84–617.**

Court of Criminal Appeals of Oklahoma.

March 11, 1987.

D. Lynne Hunt, Special Counsel, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Terry J. Jenks, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, James Commander, was charged, tried, and convicted in the District Court of Muskogee County, Case No. CRF-82-82, for the offense of Kidnapping, Assault with a Dangerous Weapon, and Rape in the First Degree. He was sentenced respectively to one-hundred forty-three (143) years, ten (10) years, and one-hundred forty-seven (147) years imprisonment. We affirm.

The case arose from the kidnapping, beating and rape of R.R.W. on February 19, 1982. At about 6:30 that evening, R.R.W. and her friend had gone to the home of her friend's fiance. When she left the house a few minutes later to get a cassette tape from her car, she encountered a man she identified as the appellant. The man was selling a stereo. She left not long after that incident, but returned around 10 p.m. R.R.W. stayed in the home for only a few minutes before going to her car to lock the doors. As she was locking the car she began to feel ill, and went behind the car to vomit. Suddenly, the appellant came up behind her and dragged her down the street. He held her by one hand and held a straight-edged razor to her neck with his other hand. Two girls coming to the residence saw a man dragging R.R.W. away. They ran into the house to tell the others, but, by the time those present were able to get outside, R.R.W. was gone.

Appellant took R.R.W. to his house, which was some two blocks away. Appellant's sister saw him bring a girl into the home, and take her to the bedroom. Once inside the bedroom, the appellant forced R.R.W. to disrobe. He then removed his own clothing, turned off the light, and raped her on the bed. Several times, when R.R.W. cried, the appellant would strike her, one time injuring her lip and causing it to bleed. Finally, she was allowed to go back into the living room of the appellant's home. Another man soon came in the front door and began arguing with appellant. R.R.W. then ran out the door. She returned to her friend's home. R.R.W. ini-

tially told her friends, parents and police that the appellant had only attempted to rape her. Later, she admitted that a rape had occurred. She claimed that her initial report was based on her shame at having been raped.

### I.

In his first assignment of error, the appellant claims the trial court erred in its failure to grant a directed verdict of acquittal, concerning the rape count. Appellant's claim is two-fold: *First*, the appellant argues the State did not produce evidence of penetration sufficient to prove the offense. *Second*, he maintains that R.R.W.'s testimony was improbable, contradictory, uncertain and inconsistent, and, therefore, the conviction cannot stand because her testimony was uncorroborated. We disagree.

### A.

■ Title 21 O.S.1981, § 1113 states that "any sexual penetration, however slight, is sufficient to complete the crime" of rape. Therefore, penetration of the female vagina by the defendant's penis must be proven as an element of the crime. *Miller v. State*, 65 Okl.Cr. 26, 82 P.2d 317 (1938). However, the State is not obligated to "elicit in so many words testimony that the male organ entered to some extent the female organ...." *Miller v. State*, 629 P.2d 370, 371 (Okl.Cr.1981). The testimony need not be graphic; it is sufficient if there is some testimony to show penetration. *Huddleston v. State*, 695 P.2d 8, 11 (Okl. Cr.1985). Testimony that during sexual intercourse "penetration" was achieved is sufficient evidence to support the conviction. *Miller v. State, supra.*

■ In this case, the victim testified the appellant engaged in forced sexual intercourse with her. On cross-examination, the following testimony was elicited.

Q. Do you know the difference between an attempted rape and a rape?

A. Yes, I do.

Q. You stated that in response to the D.A.'s question that the defendant had climaxed, but not in you. Is that correct?

A. That's correct.

Q. Isn't it true that there was never any penetration involved? Isn't that why he climaxed somewhere else besides in you and that's why you told them that it was an attempted rape?

A. No sir.

This testimony, together with other statements found in the record, is sufficient to support the element of penetration.

### B.

■ Regarding the appellant's second assertion, we are of the opinion that R.R. W.'s testimony did not require corroboration in order to support this conviction. We recently noted in *Fincher v. State*, 711 P.2d 940, (Okl.Cr.1985) that:

In *Lee v. State*, 485 P.2d 482 (Okl.Cr. 1971), Judge Brett explained that "a conviction for rape may be had on the uncorroborated testimony of the prosecutrix where her testimony is not inherently improbable, or unworthy of credence." *Id.* at 484. We elaborated on this standard in *Gamble v. State*, 576 P.2d 1184 (Okl.Cr.1978), and held a conviction on uncorroborated testimony of the prosecutrix could only be overturned if "[t]he testimony [was] of such contradictory and unsatisfactory nature, or [that] the witness [was] so thoroughly impeached, that the reviewing court [can] say that such testimony is clearly unworthy of belief and insufficient as a matter of law to sustain a conviction." *Id.* at 1186.

*Id.* at 942. In this case, the appellant attempted to show the unreliability of R.R. W.'s testimony by her prior statement that she was sexually assaulted, but not raped. However, R.R.W. testified she made those initial comments because she was "ashamed" of having been raped. This single prior inconsistent statement does not render her account so inherently improbable or unworthy of credence to require corroboration.

■ We are also compelled to note that ample corroborating evidence was, in fact, presented by the State. We have previously held that a rape victim's physical condi-

tion after the crime is corroborative evidence of rape. *Holmes v. State,* 505 P.2d 189 (Okl.Cr.1972). The victim here stated she had been beaten by the appellant, and independent testimony and physical evidence showed her lip to be cut and her face swollen. We also have noted that the victim's emotional state immediately after the rape is corroborative evidence. *Id.* Upon her return to her friend's home following the incident, R.R.W. was hysterical, according to the testimony of other witnesses. Finally, two witnesses saw a white girl being dragged away from the scene by a black male, and the appellant's sister said he came home with a white girl that night. She heard the girl crying in the bedroom and, when the girl emerged, her lip was bleeding.

For these reasons, this assignment of error is wholly without merit.

## II.

Appellant next contends that the in-court identification by R.R.W. was tainted by pre-trial irregularities, inasmuch as the victim was offered only one photograph, the appellant's, from which to make an identification. We disagree.

Regarding photographic identification, we have stated the following standard for review:

The U.S. Supreme Court has held that "convictions based on eyewitness identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). However, even a suggestive pretrial confrontation "will not invalidate a courtroom identification that can be es-

tablished as independently reliable." *Green v. State,* 594 P.2d 767, 789 (Okl. Cr.1979). *Accord Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In determining the independent reliability of the identification, we consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Gregg v. State,* 662 P.2d 1385, 1388 (Okl.Cr.1983).

*Bryson v. State,* 711 P.2d 932 (Okl.Cr. 1985).

 Turning to the first step in this test—whether the photographic identification procedure was impermissibly suggestive—we find that it was. We agree with those jurisdictions which have held that, in the absence of exigent circumstances,[1] a photographic line-up involving just one photo must be condemned as suggestive.[2] However, we believe the in-court identification herein was sufficiently reliable to overcome this taint. In this case, the prosecutrix was positive in her identification of the appellant, and never varied from it. She had at least one good opportunity, perhaps more, to view the appellant in a lighted location for several minutes. Furthermore, there is no proof in the record that her prior description of the appellant was inaccurate. This assignment of error is without merit.

## III.

Appellant next asserts that prosecutorial misconduct contributed to the jury's verdict convicting him of Rape in the First Degree, and the sentences imposed. We disagree.

**1.** *Commonwealth v. Jackson,* 377 Mass. 319, 386 N.E.2d 15, 23 (1979).

**2.** *See Hudson v. Blackburn,* 601 F.2d 785, 788 (5th Cir.1979), *cert. denied,* 444 U.S. 1086, 100 S.Ct. 1046, 62 L.Ed.2d 722 (1980); *United States v. Milhollan,* 599 F.2d 518, 523 (3d Cir.1979), *cert. denied,* 444 U.S. 909, 100 S.Ct. 221, 62 L.Ed.2d 144 (1979); *Wicks v. Lockhart,* 569 F.Supp. 549, 553 (E.D.Ark.1983); *Holden v.*

*State,* 602 P.2d 452, 456 (Ala.1979); *People v. Madonna,* 651 P.2d 378, 384 (Colo.1982); *Bradely v. State,* 152 Ga.App. 902, 264 S.E.2d 332, 333 (1980); *State v. Hoisington,* 104 Idaho 153, 657 P.2d 17, 26 (1983); *People v. McCoy,* 78 Ill. App.3d 157, 33 Ill.Dec. 746, 397 N.E.2d 79, 82 (1979); *Haun v. State,* 451 N.E.2d 1072, 1076 (Ind.1983); *State v. Nolan,* 93 N.M. 472, 601 P.2d 442, 446–47 (Ct.App.1979) *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979).

We have examined the arguments of the prosecutor in detail, and, finding no error therein, decline to reverse or modify the judgment and sentence.

### IV.

Finally, we have carefully considered the appellant's allegation of ineffective assistance of counsel. We likewise consider it to be without merit.

Accordingly, for the foregoing reasons, the judgment and sentence of the trial court is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.