Willie LUDLOW, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–86–309.

Court of Criminal Appeals of Oklahoma.

Sept. 2, 1988.

Rehearing Denied Oct. 10, 1988.

Mark Barrett, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Willie Ludlow, appellant, was tried by jury and convicted of Lewd Molestation (21 O.S.1981, § 1123), in Case No. CRF–85–188, in the District Court of Bryan County before the Honorable Billie A. Mickel, Associate District Judge. The jury set punishment at one (1) year and (1) day imprisonment. Judgment and sentence was imposed accordingly. From this, appellant has perfected this appeal.

On June 7, 1985, appellant visited Joe Carnes in Caddo, Oklahoma, and spent the night at the Carnes' home. Brenda Amentrout and her family were living with the Carnes' at the time of appellant's visit. The following afternoon, appellant took a shower and a nap while Mrs. Amentrout and her five-year-old daughter, A.C., were in other parts of the house. After a short time, Mrs. Amentrout called for A.C. but got no response. She began looking for her. When she could not find her outside, she went to appellant's room. The knob was missing from the door so she looked through the hole and saw appellant laying on the bed, covered with a blanket. When she tried to open the door, it was blocked by blankets. After getting the door opened, she discovered A.C., fully clothed, under the blanket with appellant. Appellant jumped as if startled by Mrs. Amentrout's entrance. As A.C. got out of bed, she

zipped and snapped close her jeans. Mrs. Amentrout spanked A.C. for being in bed with appellant. That same evening, a customer at a grocery store noticed the bruises on A.C. from the spanking and called a social worker.

The next morning, the social worker interviewed A.C. and her mother and determined that A.C. needed medical treatment for the cuts and bruises on her arms and legs. With Mrs. Amentrout's permission, the social worker took A.C. to the hospital. Enroute to the hospital, A.C. told the social worker that her mother spanked her with a fly swatter "because her mama had caught her doing nasty things with Willie."

A.C. was placed in a foster home, during which time the social worker interviewed her at least once a week. On August 22, 1985, an interview between A.C. and the social worker was recorded on videotape. At trial, A.C. was not called to testify; instead, the State introduced the videotape under 12 O.S.Supp.1984, § 2803.1. Appellant testified at trial and denied the whole incident.

■ As appellant's first assignment of error, he asserts his constitutional right to confront witnesses was violated by the introduction of the videotape of A.C. In support of this argument, he points out that several foundational requirements under 12 O.S.Supp.1984, § 2803.1 were lacking. Section 2803.1 creates an exception to the hearsay rule for statements of children twelve (12) years of age or younger which describe acts of sexual contact. Certain foundational requirements are established in subparagraphs (A) and (B) to protect the confrontation rights of the defendant as dictated by *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

It is unclear whether the State met all the foundational requirements as required by Section 2803.1(A) and (B); however, we do not find it necessary to address that question because we believe appellant waived his right of confrontation as to A.C.

The record reflects that appellant was given ample opportunity to object to the introduction of the videotape but failed to do so:

BY THE COURT: This is CRF–85–188. The Defendant is present with his Attorney, James Braly. The State's attorney is present. The Jury isn't present in the courtroom. Mr. Grant I notice a TV and VCR is set up. Any motions prior to the playing of the tape?

MR. BRALY: No, your Honor.

BY THE COURT: No objection to the use of the tape?

MR BRALY: No, your Honor.

BY THE COURT: Okay, let's have the jury brought back in.

Shortly thereafter, the State sought to introduce the tape. In response to the judge's inquiry, appellant's counsel stated that there was no objection to the introduction of the tape. The jury was excused while the equipment was checked, after which the following exchange occurred:

BY THE COURT: ... This is CRF–85–188. Counsel is present and the defendant is present and the Jury is not present at this time. And the video with TV in front of the jury panel and I assume, Mr. Grant, that you are calling as your next witness [A.C.] by use of the video?

MR. GRANT: That's correct, your Honor.

BY THE COURT: Mr. Braly, I have been advised by both you and the State that you have no objections.

MR. BRALY: We have no objections.

BY THE COURT: Are we ready to have the jury brought back in?

MR. GRANT: Yes sir.

MR. BRALY: Defendant's ready.

Furthermore, the record reveals that appellant was given notice two months before trial of the State's intent to use the video statement and no objections were made by appellant prior to trial.

■ In *Henderson v. State*, 661 P.2d 68, 70 (Okla.Crim.App.1983), this Court held that a defendant may waive his right to confrontation. There, the defendant failed to object to the State's use at trial of a preliminary hearing transcript of a witness. Although there was no indication that the State had used "due diligence" in seeking to find the witness, this Court held that the failure to object amounted to a waiver by the defendant of his right to confront the absent witness. *See also United States v. Alexander*, 789 F.2d 1046, 1049 (4th Cir. 1986) (defendant held to have waived confrontation rights by failing to object to lack of adequate foundation for admission of evidence). Similarly, in *Ellis v. State*, 428 F.Supp 254, 255 (W.D.Okla.1976), the defendant was held to have waived his confrontation rights. In that case, the parties stipulated to the findings of the medical examiner who performed an autopsy on the victim. The defendant, after exhausting his State remedies, filed a petition for writ of habeas corpus in the federal district court, alleging a violation of his constitutional right to confrontation. Refusing to issue the writ, the district court explained that a waiver of the right to confrontation may be accomplished by "counsel acting in the presence and on behalf of the accused." *Id.* at 255, citing *Silva v. Klinger*, 355 F.2d 657 (9th Cir.1966). Later, the Fifth Circuit Court of Appeals expounded on this principle in *United States v. Stephens*, 609 F.2d 230, 232–33 (5th Cir.1980):

We find the reasoning of these cases persuasive, and today hold that counsel in a criminal case may waive his client's Sixth Amendment right of confrontation by stipulating to the admission of evidence, so long as the defendant does not dissent from his attorney's decision, and so long as it can be said that the attorney's decision was a legitimate trial tactic or part of a prudent trial strategy.

The record reveals that appellant was present when his attorney agreed to the admission of the tape. Appellant made no statement indicating that he disagreed with his attorney's decision. Thus, the lack of objection on the part of appellant's counsel will be deemed a waiver by this Court if trial counsel's strategy was a "legitimate

trial tactic." We believe counsel's strategy in not objecting to the admission of the videotape was a legitimate method of insuring that five-year-old A.C. did not take the witness stand. The live testimony of a small child regarding sexual contact could be very damaging due to the emotional impact on the jury. Because appellant's actions constituted a waiver of his constitutional right of confrontation, his first assignment of error is without merit.

 In his second proposition of error, appellant alleges he was denied effective assistance of counsel due to his counsel's failure to object to the introduction of the videotape. He urges that without the videotape, the State's evidence would have been insufficient to support a finding of guilt, and therefore counsel's failure to object to the tape's introduction could not be considered sound trial strategy.

To determine whether counsel's performance fell below the Sixth Amendment standard of effectiveness of counsel, we rely on the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Judicial scrutiny of an attorney's performance must be highly deferential and the court must engage in a strong presumption that counsel's performance was within acceptable boundaries. *Collis v. State*, 685

P.2d 975, 977 (Okla.Crim.App.1984). To overcome this presumption, the defendant has the burden of showing that counsel's performance could not be considered sound trial strategy. *Id.* at 977, citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

As we stated previously, the lack of objection to the videotape does not indicate a deficient performance on the part of counsel, but rather it evidences a strategy wherein counsel sought to keep the live testimony of the child victim from being placed before the jury. Given the strong presumption that appellant's counsel was acting within acceptable boundaries, we cannot say that this strategy was beyond that which a reasonable attorney would have done. Appellant has failed to meet his burden regarding the first prong of the *Strickland* test.

 Even assuming arguendo that the first prong of deficient performance was met, we do not think appellant has established the second prong on prejudice. Appellant was charged and tried for attempted rape, oral sodomy and lewd molestation. He was acquitted of oral sodomy and granted a mistrial as to the attempted rape charge. While the maximum punishment for lewd molestation is twenty (20) years, appellant received only one (1) year and one (1) day, which is one day more than the minimum punishment possible under 21 O.S.1981, § 1123. Appellant has failed to meet his burden of showing that the attorney's performance prejudiced the outcome of the trial. This assignment of error is without merit.

For the aforementioned reasons, the judgment and sentence is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.